ROBERT HALL
v.
BLACK BROTHERS AND ELIJAH CARVER.

*Bill to Enforce Claim against Estate—Chattel Mortgage—Fraud.*

Upon a bill filed by two creditors of David Wright, deceased—one by simple contract and the other by a Justice's judgment on which no execution issued during the life of the decedent—neither of whom has proved his claim in the County Court against the estate, to reach the proceeds of the sale under an alleged fraudulent chattel mortgage, of most of decedent's

estate, the defendants being the mortgagee and the administrator, it is *held:* That the bill is in effect a creditor's bill, and that the decree can not be sustained, as it ignores the County Court and the rights of other creditors and of the family of the deceased.

[Opinion filed November 20, 1886.]

APPEAL from the Circuit Court of Cass County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. LEEPER & GRIDLEY, for appellant.

Messrs. KETCHAM & GRIDLEY, for appellees.

PLEASANTS, P. J.   The bill herein, filed by appellees, avers that on January 27, 1883, David Wright executed to appellant Hall a pretended note for $1,100 and to secure it a chattel mortgage of nine horses, two cows, and the undivided third of 5,000 bushels of corn; that said note and mortgage were a fraud and a sham, made without consideration and to hinder and delay creditors; that Wright had no other property subject to execution; that he then owed Black Brothers, on note and account, $253.58, and Elijah Carver $85.50, which was afterward reduced to judgment before a Justice of the Peace; that he died in March 1883, and Harry C. Thompson was appointed administrator, but no property has come to his hands as such, nor does he know of any wherewith to pay Wright's debts; that Hall took possession of what was described in said mortgage, sold it thereunder for $950 and claims the proceeds as his own.

It makes Hall and the administrator defendants and prays that the court cause the amount of Wright's indebtedness to complainants respectively, and the amount realized by Hall from the sale of the mortgaged property to be ascertained, and that Hall be ordered to pay complainants out of such proceeds, in full, if there be enough, and if not, *pro rata.*

In short, this is a bill filed by two creditors of decedent's estate—one by simple contract and the other by a Justice's judgment on which no execution issued during

the life of decedent—neither of whom has proved his claim in the County Court, against the administrator and a third party who is alleged to hold by fraud about all of the estate, to compel the latter to pay their claims out of what he holds, even if it takes all to do it, without regard to the rights of the widow and children or other creditors.

Process was served on the defendants personally. The administrator was defaulted, but Hall answered that the note and mortgage were executed to secure existing indebtedness and advances to be made in good faith and not to defraud creditors, and that the proceeds of the mortgage sales— amounting to only $676—were fairly applied upon Wright's debt to him. To which there was a replication.

It appears that Wright left a widow and five children, and that his whole estate, aside from the property described in the mortgage, would not exceed in value $300. He was a tenant of Hall, and there was evidence tending to show that he owed him nearly $400 on other accounts and had agreed to pay him $600 cash rent for the year commencing March 1, 1883; that he owed Thompson $200 or more and a little to other parties; that Thompson drew these papers and promised Hall to protect his claim. Hall says he sold the live stock for $417 and the corn for $261.12; that he had agreed to share the proceeds of the corn with Thompson *pro rata*, and that he paid him $142.

On final hearing upon the pleadings and proofs a decree was made which does not find the allegation of fraud to be sustained, nor show what amount was found to have been realized on the mortgaged property, or what was allowed to Hall; but it does find due to Black Bros. $330.98 and to Carver $85, and that there was in Hall's hands subject to the rights of complainants, after allowing him all just credits, the sum of $201.60, which it orders him to pay within forty days to the Clerk of the Court, to be divided and applied *pro rata*, as follows: On claim of Black Bros. $160.39, and on that of Carver $41.21. From this decree Hall appealed.

Since appellant did not see fit to demur to the bill, perhaps the court might have been sustained in applying any balance in his hands belonging to the estate upon complainants'

claims *pro rata,* if there had been no widow or other creditor, though that is just what the County Court would have done in such case, and no reason is shown for taking the administration out of its hands. But upon the facts appearing in evidence as above stated, we think the decree here made was clearly erroneous. Complainants had no lien upon any property of the estate, nor were they for any reason entitled to preference over any other creditor, much less over the widow's award. Their claims were of the 7th class. Whatever of personal estate was left by decedent, in whosesoever hands, belonged to the administrator, in trust to dispose of it as prescribed by the statute. It was his right and duty to recover or collect it, and then to apply it under the direction of the County Court upon personal expenses, widow's award, costs and debts, so far as it would reach, in proper order and proportion.

Enough appears from the findings of the decree and from the evidence to show there was really nothing here for creditors; and if there were, complainants would be entitled only with others, according to their class and in proportion to their amounts.

The decree giving them the whole, to the exclusion of the widow and other creditors, will therefore be reversed without prejudice to any proceedings to be taken by them in the County Court.

*Decree reversed.*